## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Yordanos Haile,

|  |  |  |
|---|---|---|
|  | Plaintiff, | Civ. No. 14-379 (RHK/JJK) |
| v. |  | **MEMORANDUM OPINION** |
|  |  | **AND ORDER** |

HMS Host,

                              Defendant.

Michael A. Fondungallah, Fondungallah & Kingham, LLC, St. Paul, Minnesota, for Plaintiff.

Jennifer L. Cornell, Joseph G. Schmitt, Nilan Johnson Lewis PA, Minneapolis, Minnesota, for Defendant.

## INTRODUCTION

Plaintiff Yordanos Haile alleges in this action that her former employer, HMS Host, (1) discriminated against her on the basis of race and national origin, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a), and the Minnesota Human Rights Act (MHRA), Minn. Stat. § 363A.08, subd. 2; (2) retaliated against her after she complained about how she and others were paid and treated, in violation of Title VII and the MHRA; and (3) failed to accommodate her pregnancy, in violation of the Pregnancy Discrimination Act of 1978 (PDA) amendment to Title VII, § 42 U.S.C. 2000e(k).  HMS Host now moves for summary judgment on all claims.  For the following reasons, summary judgment will be granted.

## BACKGROUND

The following facts are recited in the light most favorable to Haile:

Haile is an Ethiopian woman who, in 2001, began working as a cashier in the retail division of HMS Host at the Minneapolis-St. Paul airport.  (Pl. Ex. 1, 23, 27, 33.)  HMS Host is a company that provides food and beverage services in airports and, at the time of Haile's employment, also operated a retail division.  (Risch Decl. ¶ 2.)  Haile was promoted to lead sales associate within a year of beginning her employment.  (Pl. Ex. 1, 33.)  In that role, in addition to her cashier duties, she distributed keys and money to associates at the beginning of shifts and collected money and dropped it in a cash room at the end of shifts.  (Id., 35-38.)  She continued to work as a lead associate until September 2011, when her employment was terminated.  (Pl. Ex. 10.)

The standard work procedures at HMS Host were as follows:  Each associate at HMS Host was assigned a cash register to use during her shift, which was accessed with a "Micros" electronic key card that tracked the register's transactions.  (Pl. Ex. 3; Risch Decl. ¶ 4.)  If a supervisor needed access to the register to void a transaction, the associate swiped her Micros card to unassign the register and the supervisor swiped her card to assign it to herself, reversing the process when done.  (Risch Decl. ¶¶ 6-7.)  At the end of a shift, the associate sealed everything from her register in a tamper-evident bag.  (Pl. Ex. 4.)  The lead associate dropped the bag in the cash room, where staff placed its contents in a counting machine.  (Vanyo Decl. ¶ 3.)  The machine printed a receipt of the associate's identification number, the time, and the amount of cash in the bag.  (Id. ¶ 4.)

If the company found a variance after comparing the amount of cash in an associate's bag to the sales recorded on the register, HMS Host policy directed that within three days of discovery the company should issue a Funds Discrepancy Notice to

the employee.  (Pl. Ex. 8.)  If the total amount of the discrepancy was greater than $50,

the employee would be suspended pending investigation.  (Id.)  An employee found to be

at fault could be disciplined or have her employment terminated.  (Id.)  Additionally, the

collective bargaining agreement between Haile's union, the Metal Shop, Warehousemen,

and Helpers Union Local 970, and HMS Host provided that "within five working days

after cash and sales receive[d] their final review, employees [would] be notified of a

shortage or overage; otherwise such notice [would] be considered untimely."  (Pl. Ex. 9,

18.)

On September 11, 2011, Haile's cash bag from the previous day was counted.

(Cornell Decl., Ex. C, Ex. 29.)  Four days later, an HMS Host employee compared her

cash bag receipts to her register transactions (Vanyo Decl. ¶ 6) and discovered her cash

bag for September 10 had $50.02 more than her register transactions indicated it should

have had (Cornell Decl., Ex. D, Ex. 8).  A Funds Discrepancy Notice was prepared that

day, September 15.  (Id., Ex. D, Ex. 8.)  According to Jennifer Risch, Haile's manager,

she investigated the discrepancy as soon as she learned of it.  She confirmed all voids had

been performed correctly and there was no off-set with another associate that day, and

she ran a journal of all of Haile's transactions.  (Id., Ex. D, 49-50.)  She could not identify

a source of the overage.  (Id., Ex. D, 50.)

On September 17, Risch gave Haile a Corrective Action Written Warning Notice

informing her that she had an overage and was suspended.  (Cornell Decl., Ex. C, Ex.

27.)  Sometime in the next four days, Haile met with HMS Host representatives to talk

about the overage.  During that meeting, Haile mentioned that her coworker, Eyob, had

told her Risch was at her register when she was on break on September 10.  (Pl. Ex. 1, 202-03.)  Haile asked the HMS Host representatives to review video of her register to check if that were true.  (Id., 203.)  They informed her there was no video to watch because the camera was not working, and, according to Haile, no one from the company asked Eyob about the incident.  (Id., 203-04.)

On September 21, 2011, Haile's employment at HMS Host was terminated.  (Pl. Ex. 10.)  The termination notice cited her $50.02 overage as well as her failure to sign out cash bags and keys on September 17, 2011, concluding that HMS Host was terminating her employment "for violating the HMS Host cash handling policy."  (Id.)  Haile filed a charge with the EEOC on October 18, 2011, ultimately receiving a right-to-sue letter. (Pl. Ex. 1, 183; Cornell Decl., Ex. C, Ex. 2.)  She commenced this action on February 12, 2014, alleging eight counts against HMS Host.  She later agreed to dismiss several; the remaining are claims of race and national-origin discrimination under Title VII (Count I) and the MHRA (Count II); retaliation under Title VII (Count III) and reprisal under the MHRA (Count IV); and sex discrimination, under the PDA (Count V).[1]  HMS Host now moves for summary judgment.  The Motion, having been fully briefed and the Court having heard oral argument on March 9, 2015, is now ripe for disposition.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Ricci v. DeStefano, 557

---

[1] Reprisal is the MHRA equivalent of retaliation under Title VII.

U.S. 557, 586 (2009).  HMS Host bears the burden of showing that the material facts in

the case are undisputed.  Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir.

2011) (*en banc*).  The Court must view the evidence, and the inferences that may be

reasonably drawn from it, in the light most favorable to Haile.  Beard v. Banks, 548 U.S.

521, 529–30 (2006); Weitz Co. v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009).

Haile may not rest on mere allegations or denials, but must show through the presentation

of admissible evidence that specific facts exist creating a genuine issue of material fact

for trial.  Fed. R. Civ. P. 56(c)(1)(A); Wood v. SatCom Mktg., LLC, 705 F.3d 823, 828

(8th Cir. 2013).

## ANALYSIS

*1.  MHRA Claims (Counts II and IV)*

Haile brings two claims under the MHRA, one for race and national-origin

discrimination (Count II) and one for reprisal (Count IV).  HMS Host argues, and Haile

does not dispute, that these claims are barred by the statute of limitations.  Minnesota law

provides that a claim under the MHRA "must be brought as a civil action . . . , filed in a

charge with a local commission . . . , or filed in a charge with the commissioner within

*one year* after the occurrence of the [unfair discriminatory] practice."  Minn. Stat.

§ 363A.28, subd. 3 (emphasis added).  Haile's employment was terminated on September

21, 2011.  (Pl. Ex. 10.)  She did not file a civil action until February 11, 2014, nearly two-

and-a-half years later.  There is no evidence she *ever* filed a charge with a local

commission or the commissioner.  She did not indicate on her EEOC charge that she

wanted it to be cross-filed with any state or local agency (Cornell Decl., Ex. C, Ex. 2),

and the EEOC did not cross-file her charge (id., Ex. A).  Accordingly, the statute of

limitations has expired on Haile's MHRA claims, and Defendant's Motion will be

granted on Counts II and IV.

    *2.  Title VII Race and National-Origin Discrimination (Count I)*

Haile also brings a Title VII claim alleging she was fired because of her race and

national origin.  Title VII makes it unlawful for an employer "to discharge any individual,

or otherwise discriminate against any individual with respect to [her] compensation,

terms, condition, or privileges of employment, because of such individual's race . . . or

national origin."  42 U.S.C. § 2000e-2(a).  Haile can defeat HMS Host's Motion for

summary judgment through direct or indirect evidence.  Griffith v. City of Des Moines,

387 F.3d 733, 736 (8th Cir. 2004).  Because she relies only on indirect evidence, the

Court analyzes her claim under the McDonnell Douglas framework.  Haile must first

establish a prima facie case of discrimination by showing (1) she is a member of a

protected group, (2) she was meeting her employer's legitimate expectations, (3) she

suffered an adverse employment action, and (4) facts exist that give rise to an inference

of discrimination.  Takele v. Mayo Clinic, 576 F.3d 834, 838 (8th Cir. 2009).  If HMS

Host then articulates a legitimate, non-discriminatory reason for its action, Haile must

produce sufficient evidence that HMS Host's reason was a mere pretext.  Guimaraes v.

SuperValu, Inc., 674 F.3d 962, 973 (8th Cir. 2012).

Haile's claim fails on the fourth element of the prima facie case because she does

not identify facts that give rise to an inference of discrimination.  She attempts to do so in

two ways.

Haile's primary argument is that she was treated differently than similarly situated employees who were not black or Ethiopian.  Lewis v. Heartland Inns of Am., L.L.C., 591 F.3d 1033, 1040 (8th Cir. 2010); Box v. Principi, 442 F.3d 692, 696 (8th Cir. 2006).  But in the end neither person she identifies is a comparator.  She points first to an employee named "Manny," who had two cash discrepancies and was not terminated.  (Pl. Ex. 1, 192.)  It is undisputed, however, that HMS Host's only employee named Manny was Ethiopian and black, like Haile (Metcalf Decl., ¶ 5 & Exs. A & B), and he is therefore not a relevant comparator.  See Box, 442 F.3d at 696.  She also identifies an employee named "Kenny," who kept his job after having a cash discrepancy greater than $50 sometime around 2009.  (Pl. Ex. 1, 192-93.)  But it is undisputed that HMS Host changed its cash discrepancy policy in August 2010.  (Cornell Supp. Decl., Ex. B, 32.)  Employees are not similarly situated when they are subjected to different policies establishing different standards of behavior.  Stewart v. Gen. Mills, Inc., No. 08-CV-16-LRR, 2009 WL 350639, at *12 (N.D. Iowa Feb. 11, 2009) (plaintiff and comparator were not similarly situated because comparator's treatment occurred ten years earlier under a different policy); see also Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 852 (8th Cir. 2005) (plaintiff and comparator were similarly situated because they violated the *same policy* in the same way) (emphasis added).

Her second argument, identifying three additional examples of workplace treatment that purportedly give rise to an inference of discrimination, is equally unavailing.  First, Haile claims she and Risch received different lengths of maternity leave, but she does not argue that was related to her race or national origin.  Second, she

asserts Risch gave white employees more hours than minority employees, but she identifies nothing in the record supporting this claim.  Finally, she describes a black employee and a white employee receiving different punishments for selling tobacco to minors, but that is irrelevant to whether *Haile*, who was not involved in those sales, suffered discriminatory treatment.  Lewis, 591 F.3d at 1039 (explaining that the "ultimate issue is the reasons for *the individual plaintiff's* treatment, not the relative treatment of different *groups* within the workplace") (internal citations omitted) (italics in original).[2]

In the Court's view, there is simply insufficient evidence from which a reasonable jury could infer discrimination on the basis of race or national origin.  Haile has failed to establish a prima facie case of race and national-origin discrimination, and, accordingly, the Court will grant summary judgment to HMS Host on Count I.

### 3.   *Title VII Retaliation (Count III)*

Haile alleges she was fired from HMS Host for retaliatory reasons, in violation of Title VII.  Title VII prohibits an employer from "discriminat[ing] against any of his employees . . . because [she] has opposed any practice made an unlawful employment practice by this subchapter."  42 U.S.C. § 2000e-3.  Again using the McDonnell Douglas burden-shifting framework, Haile must first establish a prima facie case of retaliation by showing (1) she engaged in protected conduct, (2) she suffered a materially adverse

---

[2] To the extent Haile uses these examples to demonstrate that similarly situated employees were treated differently than she was, they fail to do so because they do not involve a cash discrepancy, the conduct at issue here.  See Rodgers, 417 F.3d at 852 (explaining that employees are similarly situated if they were "involved in or accused of the *same or similar conduct* and were disciplined in different ways") (emphasis added).

employment action, and (3) the two were causally linked.  Fercello v. Cnty. of Ramsey, 612 F.3d 1069, 1077-78 (8th Cir. 2010).

The Court need not decide whether any of Haile's conduct is protected because even if it is, her claim fails on the third element.  Taking the evidence in the light most favorable to Haile, there is no evidence sufficient to give rise to an inference of a causal link between the conduct she claims was protected and the materially adverse employment action, her termination.  She argues she engaged in three instances of protected conduct: (1) complaining to the union about Risch cutting her hours in February 2011 (Pl. Ex. 5, 65); (2) complaining to Human Resources about how Risch treated her while she was pregnant in 2010 (Pl. Ex. 1, 108-09, 114); and (3) refusing to follow Risch's instructions to prohibit employees who are minorities from clocking in early (id., 81-83).[3]  Haile claims Risch "orchestrated" her termination because of these actions, asserting that two things HMS Host did show the requisite causal connection.  First, she claims HMS Host violated its own policies and union agreement by telling her of her cash discrepancy later than required and not explaining the delay.  Second, she claims HMS Host refused to investigate evidence that Risch "had a hand in what transpired."  (Pl. Opp'n Mem., 30.)

Haile's argument fails on both logical and factual grounds.  Even if HMS Host behaved as Haile claims, she does not explain *how* that behavior shows a causal link

_____

[3] She also argues her "refusal to bear witness to Jennifer to discipline of Eyob" was protected (Pl. Opp'n Mem., 30), but the Court will not consider it because she does not identify any evidence in the record concerning this incident.  Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs., 558 F.3d 731, 735 (8th Cir. 2009) (explaining that the district court does not need to search through the record to identify issues of fact).

between her termination and complaints Haile made months or years earlier.  There is simply no evidence from which a reasonable jury could draw that inference. Furthermore, her argument fails on the facts.  Taking the evidence in the light most favorable to Haile, HMS Host followed its policy and the union agreement.  It issued a Funds Discrepancy Notice the day it discovered the discrepancy, satisfying the policy requirement that Haile be notified within three days of discovery and the CBA requirement that she be notified within five days.  (Cornell Decl., Ex. D, Ex. 8; Pl. Ex. 8; Pl. Ex. 9, 18.)  Having investigated the incident and determined Haile was responsible, HMS Host terminated her employment, which it could do under the policy.   (Pl. Ex. 8.) As to her second piece of evidence, the only fact identified in her brief to which she could be referring is her testimony that Eyob said he saw Risch by her register on September 10 and HMS Host did not investigate if that were true.  (Pl. Ex. 1, 202-04)  But her testimony about Eyob's statement is simply hearsay, and the Court cannot rely on hearsay statements at summary judgment.  Brooks v. Tri-Sys., Inc., 425 F.3d 1109, 1112 (8th Cir. 2005) ("[D]eposition testimony must also be admissible to be considered in a ruling on a motion for summary judgment."); see also Fed. R. Evid. 802 (providing that hearsay is not admissible evidence).  Similarly, she has no personal knowledge that HMS Host did not investigate if Risch had been by her register on September 10.  See Fed. R. Evid. 602 (requiring a witness to have personal knowledge to testify).  There is no genuine issue of material fact about the causation element of her prima facie case.  Summary judgment will be granted to HMS Host on Count III.

### 4. Pregnancy Discrimination Act (Count V)

Finally, Haile brings a claim for pregnancy discrimination.  Her Complaint alleges pregnancy-discrimination claims under both the Americans with Disabilities Act ("ADA") and the PDA.  At the motion-to-dismiss stage, Haile agreed to dismiss her ADA claim.  Haile devotes only two short paragraphs to her pregnancy discrimination claim in her brief, but it is clear from the case she relies upon, Chalfant v. Titan Distribution, Inc., and her brief analysis, that she is arguing about a pregnancy-discrimination claim under the *ADA*, not the PDA.  475 F.3d 982, 988 (8th Cir. 2007) (setting out the elements of an ADA claim).  She does not identify any genuine dispute of material fact on the PDA claim, and the Court need not do so for her.  Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs., 558 F.3d 731, 735 (8th Cir. 2009) ("It [is] not the District Court's responsibility to sift through the record to see if, perhaps, there was an issue of fact."). The Court will therefore grant summary judgment to HMS Host on Count V.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 32) is **GRANTED** and Haile's Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date:  April 20, 2015

s/Richard H. Kyle
RICHARD H. KYLE
United States District Judge